David E. Bower (SBN 119546)
**MONTEVERDE & ASSOCIATES PC**
600 Corporate Pointe, Suite 1170
Culver City, CA 90230
Tel: (213) 446-6652
Fax: (212) 202-7880

*Counsel for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHEN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN ADUCCI, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>ECHELON CORPORATION, RON SEGE, ARMAS CLIFFORD MARKKULA, JR., ROBERT J. FINOCCHIO, JR., ROBERT R. MAXFIELD, and BETSY RAFAEL,<br><br>Defendants. | Civil Action No. 5:18-cv-4415<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL**<br><br>1. **VIOLATIONS OF SECTION 14(a) OF THE SECURITIES EXCHANGE ACT OF 1934 AND RULE 14a-9**<br><br>2. **VIOLATIONS OF SECTION 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934** |

Plaintiff John Adduci ("Plaintiff"), by his undersigned attorneys, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1. This action is brought as a class action by Plaintiff on behalf of himself and all other similarly situated public shareholders of Echelon Corporation ("Echelon" or the "Company") against Echelon and the members of the Company's board of directors (collectively, the "Board" or "Individual Defendants," and, together with Echelon, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C.

§§ 78n(a) and 78t(a), and Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. 240.14a-9, in connection with the proposed acquisition (the "Proposed Transaction") of Echelon by Adesto Technologies Corporation ("Adesto"), through its wholly owned subsidiary, Circuit Acquisition Corporation ("Merger Sub").

2. On June 28, 2018, the Board caused the Company to enter into an Agreement and Plan of Merger ("Merger Agreement"), pursuant to which each common share of Echelon will be converted into the right to receive $8.50 in cash (the "Merger Consideration").

3. On July 16, 2018, in order to convince Echelon's shareholders to vote in favor of the Proposed Transaction, Defendants authorized the filing of a materially incomplete and misleading proxy statement (the "Proxy") with the SEC, in violation of Sections 14(a) and 20(a) of the Exchange Act.

4. In particular, the Proxy contains materially incomplete and misleading information concerning: (i) financial projections for Echelon; and (ii) the valuation analyses performed by Echelon's financial advisor, Piper Jaffray & Co. ("Piper Jaffray"), in support of its fairness opinion.

5. The special meeting of Echelon shareholders to vote on the Proposed Transaction is forthcoming. It is therefore imperative that the material information that has been omitted from the Proxy is disclosed to the Company's shareholders prior to the shareholder vote so that they can properly exercise their corporate suffrage rights.

6. For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act, and SEC Rule 14a-9. Plaintiff seeks to enjoin Defendants from holding the shareholder vote on the Proposed Transaction and taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Echelon's shareholders sufficiently in advance of the vote on the Proposed Transaction or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

**JURISDICTION AND VENUE**

7. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act.

8. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

9. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because: (i) the conduct at issue took place and had an effect in this District; (ii) Echelon maintains its primary place of business in this District; (iii) a substantial portion of the transactions and wrongs complained of herein, including Defendants' primary participation in the wrongful acts detailed herein, occurred in this District; and (iv) Defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

**PARTIES**

10. Plaintiffs is, and has been at all relevant times, a shareholder of Echelon.

11. Defendant Echelon is a Delaware corporation and maintains its principal executive offices at 2901 Patrick Henry Drive, Santa Clara, California 95054. Echelon is an energy control networking company and develops open-standard control networking platforms for Industrial Internet of Things (IIoT) applications. The Company operates in one reporting segment—the IIoT segment—and currently operates in three geographical markets—the Americas; Europe, Middle East and Africa, and Asia Pacific/Japan. Echelon's common stock is listed on the Nasdaq Stock Market under the symbol "ELON."

12. Defendant Ron Sege is, and has been at all relevant times, a director of the Company and currently serves as Chairman of the Board, President, and Chief Executive Officer.

13. Defendant Armas Clifford Markkula, Jr. is, and has been at all relevant times, a director of the Company.

14. Defendant Robert J. Finocchio, Jr., is, and has been at all relevant times, a director of the Company.

15. Defendant Robert R. Maxfield is, and has been at all relevant times, a director of the Company.

16. Defendant Betsy Rafael is, and has been at all relevant times, a director of the Company.

17. The parties identified in paragraphs 11 through 16 are collectively referred to as the "Defendants."

## CLASS ACTION ALLEGATIONS

18. Plaintiff brings this class action pursuant to Fed. R. Civ. P. 23 on behalf of himself and the other public shareholders of Echelon (the "Class"). Excluded from the Class are Defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any Defendant.

19. This action is properly maintainable as a class action because:

    a. The Class is so numerous that joinder of all members is impracticable. As of June 22, 2018, there were approximately 4.54 million shares of Echelon common stock outstanding, held by hundreds to thousands of individuals and entities scattered throughout the country. The actual number of public shareholders of Echelon will be ascertained through discovery;

    b. There are questions of law and fact that are common to the Class that predominate over any questions affecting only individual members, including the following:

        i) whether Defendants have misrepresented or omitted material information concerning the Proposed Transaction in the Proxy in violation of Section 14(a) of the Exchange Act;

   ii)  whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and

   iii)  whether Plaintiff and other members of the Class will suffer irreparable harm if compelled to vote their shares regarding the Proposed Transaction based on the materially incomplete and misleading Proxy.

  c. Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature and will fairly and adequately protect the interests of the Class;

  d. Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class;

  e. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for the party opposing the Class;

  f. Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole; and

  g. A class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

## SUBSTANTIVE ALLEGATIONS

**I. Background to the Proposed Transaction**

20. Echelon, incorporated in California in 1988 and reincorporated in Delaware in 1989, is a pioneer in developing distributed intelligence, open-standard control networking platforms for Industrial Internet of Things ("IIoT") applications and delivering elements necessary to design, install, monitor, and control highly reliable, scalable, and secure communities of devices. Echelon's vision is one of low-cost monitoring and control technology in every industrial

electrical device in the world and complete vertical solutions in the fastest growing market segments. With more than 140 million Echelon-powered devices shipped worldwide, Echelon helps its customers migrate existing legacy devices, and bring new devices and applications into a growing global Industrial Internet.

21. Adesto is a leading provider of innovative application-specific semiconductors for the IIoT era. Adesto's technology is used by more than 2,000 customers worldwide who are creating differentiated solutions across industrial, consumer, medical, and communications markets. With its growing portfolio of high-value technologies, Adesto is helping its customers usher in the era of the IIoT.

22. On June 29, 2018, Echelon and Adesto issued a joint press release announcing the Proposed Transaction. The press release stated, in relevant part:

**Adesto Announces Agreement to Acquire Echelon**

*Further Extends Leadership in Semiconductor-Based Solutions
for the Industrial IoT*

**SANTA CLARA, CA – June 29, 2018 –** Adesto Technologies (NASDAQ: IOTS), a leading provider of innovative application-specific semiconductors for the IoT era, and Echelon Corporation (NASDAQ: ELON) today announced a definitive agreement under which Adesto will acquire Echelon for $8.50 per share. Echelon is a pioneer in the development of open-standard networking platforms for connecting, monitoring and controlling devices in commercial and industrial applications. The acquisition price represents a total equity value of approximately $45 million, and a total enterprise value of about $30 million, after accounting for Echelon's cash and investments on its balance sheet at March 31, 2018, as well as expected transaction expenses of approximately $4 million.

Benefits to Adesto of completing the transaction include:

- Increases revenue and accelerates margin expansion opportunities

- Expected to be accretive to EBITDA and non-GAAP earnings within the first 12 months

- Significantly increases Served Available Market (SAM)

- Enhances technology assets and capabilities to include broad range of semiconductors, software and systems solutions for Industrial IoT (IIoT)

"With the acquisition of Echelon, we are continuing to advance toward our vision of becoming a significant player in semiconductor and communication systems for IoT markets, in particular industrial IoT," said Narbeh Derhacobian, CEO of Adesto. "Adesto started out providing application specific non-volatilememories for IoT, and we've continued to expand our memory portfolio with a wide range of differentiated devices. Through S3 Semiconductors, we added strong mixed-signal and RF ASIC capabilities. Following the acquisition of Echelon, we will be able to provide not only semiconductors, but also powerful software and deep systems and solutions expertise for industrial systems and enterprise automation, with a loyal customer base. We're excited about the potential this acquisition presents as Adesto enters its next phase of growth."

Ronald Sege, Chairman and CEO, Echelon Corp., said, "This transaction provides immediate and significant value to our stockholders. Our customers have become particularly excited about our strategy of helping them embrace our estimated 140 million installed LON-powered devices, extend them with new technologies and enhance them with cloud-based analytics to achieve better business outcomes across a variety of applications including smart buildings, smart manufacturing and smart lighting. The combination of Adesto and Echelon promises to accelerate this growth strategy through expected synergies in product, engineering, sales, marketing and service. We look forward to working closely with the Adesto team to ensure a smooth transition and complete the transaction as quickly as possible."

The transaction is subject to customary closing conditions, including approval by Echelon's stockholders. Adesto expects the transaction to close in the third calendar quarter of 2018, after which time Echelon will become a business unit within Adesto.

Adesto expects to finance the transaction through a combination of existing cash and equity and/or debt. Adesto today issued a separate announcement regarding its financing plans.

Canaccord Genuity is serving as financial advisor to Adesto, and Fenwick and West LLP is serving as legal counsel to Adesto. Piper

Jaffray & Co is serving as financial advisor to Echelon and Wilson Sonsini Goodrich & Rosati, Professional Corporation is serving as legal counsel to Echelon.[1]

## II. The Inadequate Merger Consideration

23. The Merger Consideration undervalues Echelon and is the result of a flawed sales process that put the interests of Adesto ahead of value for the shareholders.

24. On February 8, 2018, the Company reported its Fourth Quarter 2017 financial results. Notably, the Company reported revenues of $8.03 million, representing a 3% increase from the previous quarter and a more than 7% increase over the previous year.[2]

25. Defendant Ron Sege, the Company's Chairman and CEO, commented on the favorable results, stating that "[w]ith a majority of our largest embedded LON customers showing year-over-year growth, and the value of accessible, operational data increasing, *we believe this trend will continue*." *Id.*

26. Indeed, on April 26, 2018, the Company *raised* its revenue outlook from $383-387 million to $389-$394.[3]

27. On May 6, 2018, Echelon reported its First Quarter 2018 financial results. As Defendant Ron Sege previously stated, the Company reported positive results and increased revenue in consecutive financial quarters.[4]

---

[1] Echelon Corporation, Current Report (Form 8-K), at Exhibit 99.1 (Press Release of Echelon Corporation dated June 29, 2018) (June 29, 2018).

[2] *Echelon Reports Fourth Quarter 2017 Results*, Seeking Alpha (Feb. 8, 2018), *available at* https://seekingalpha.com/pr/17070276-echelon-reports-fourth-quarter-2017-results.

[3] *Echelon raises 2018 revenue view to $389M-$394M from $383M-$387*, The Fly (April 26, 2018), *available at* https://thefly.com/landingPageNews.php?id=2719715.

[4] *Echelon Reports First Quarter 2018 Results*, Seeking Alpha (May 6, 2018), *available at* https://seekingalpha.com/pr/17160325-echelon-reports-first-quarter-2018-results.

28.     In sum, the Merger Consideration undervalues the Company and its future business prospects. It is therefore imperative that shareholders receive the material information (discussed in detail below) that Defendants have omitted from the Proxy, which is necessary for shareholders to properly exercise their corporate suffrage rights and make an informed decision concerning whether to vote in favor of the Proposed Transaction.

**III.    The Materially Incomplete and Misleading Proxy**

29.     On July 16, 2018, Echelon filed the Proxy with the SEC in connection with the Proposed Transaction. The Proxy solicits the Company's shareholders to vote in favor of the Proposed Transaction. The Individual Defendants were obligated to carefully review the Proxy before it was filed with the SEC and disseminated to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions. However, the Proxy misrepresents and/or omits material information that is necessary for the Company's shareholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

30.     First, the Proxy fails to provide Echelon's unlevered free cash flow projections.[5] Echelon's unlevered free cash flows were utilized by Piper Jaffray in their valuation analyses, including their discounted cash flow ("DCF") analysis for Echelon, and are material to the Company's shareholders. Indeed, investors are concerned, perhaps above all else, with the unlevered free cash flows of the companies in which they invest. Under sound corporate finance theory, the market value of a company should be premised on the expected unlevered free cash flows of the corporation. Accordingly, the question that the Company's shareholders need to assess in determining whether to vote in favor of the merger is clear – is the Merger Consideration fair

---

[5] Unlevered free cash flows are used to determine a company's enterprise value. The unlevered free cash flow allows investors to ascertain the operating value of a company independent of its capital structure. This provides a greater degree of analytical flexibility and allows for a clearer picture of the value of the company overall. For this reason, unlevered free cash flows are routinely used to value a company, especially in merger contexts.

compensation given the expected unlevered free cash flows? Without Echelon's unlevered free cash flow projections, the Company's shareholders will not be able to answer this question and assess the fairness of the Merger Consideration.

31. By electing to disclose *some* of Echelon's projections, Defendants' obligated themselves to speak the ***whole truth*** regarding Echelon's projections by providing ***complete and accurate*** projections because if a proxy discloses financial projections and valuation information, such ***projections must be complete and accurate***, rather than cherry-picking favorable financial metrics to disclose. The question here is not the duty to speak, but liability for not having spoken enough. With regard to future events, uncertain figures, and other so-called soft information, a company may choose silence or speech elaborated by the factual basis as then known—but it may not choose half-truths.

32. Furthermore, complete disclosure of Echelon's unlevered free cash flow projections is particularly important for Company shareholders in light of the fact that shareholders are being asked to vote on a transaction, which has been unanimously endorsed by the Board, that, if consummated, will cause Echelon shareholders to be cashed out of the Company and deny them their right to fully share equitably in the true value of the Company.

33. With respect to Piper Jaffray's *Discounted Cash Flow Analysis*, the Proxy fails to disclose the following key components used in their analysis: (i) Echelon's projected unlevered free cash flows from May 31, 2018 to December 31, 2022; (ii) Echelon's projected terminal value at December 31, 2022, including the inputs and assumption underlying its calculation; (iii) the inputs and assumptions underlying the calculation the discount rates ranging from 25% to 35%; and (iv) the inputs and assumptions underlying the calculation of the long-term growth rates ranging from 0% to 3.0%. *See* Proxy at 47.

34. These key inputs are material to Echelon shareholders, and their omission renders the summary of Piper Jaffray's *Discounted Cash Flow Analysis* incomplete and misleading. As a highly-respected professor explained in one of the most thorough law review articles regarding the fundamental flaws with the valuation analyses bankers perform in support of fairness opinions, in

a discounted cash flow ("DCF") analysis a banker takes management's forecasts, and then makes several key choices "each of which can significantly affect the final valuation." Steven M. Davidoff, *Fairness Opinions*, 55 Am. U.L. Rev. 1557, 1576 (2006). Such choices include "the appropriate discount rate, and the terminal value…" *Id*. As Professor Davidoff explains:

> There is substantial leeway to determine each of these, and any change can markedly affect the discounted cash flow value. For example, a change in the discount rate by one percent on a stream of cash flows in the billions of dollars can change the discounted cash flow value by tens if not hundreds of millions of dollars….This issue arises not only with a discounted cash flow analysis, but with each of the other valuation techniques. This dazzling variability makes it difficult to rely, compare, or analyze the valuations underlying a fairness opinion *unless full disclosure is made of the various inputs in the valuation process, the weight assigned for each, and the rationale underlying these choices*. The substantial discretion and lack of guidelines and standards also makes the process vulnerable to manipulation to arrive at the "right" answer for fairness. This raises a further dilemma in light of the conflicted nature of the investment banks who often provide these opinions.

*Id.* at 1577-78 (emphasis added). Given these points, the above-mentioned information underlying Piper Jaffray's *Discounted Cash Flow Analysis* is material to Echelon shareholders, as the failure to disclose the information prevents Echelon shareholders from assessing the legitimacy of the DCF analysis and resulting valuation range, thereby rendering the Proxy materially incomplete and misleading.

35. With respect to Piper Jaffray's *Selected Public Companies Analysis Semiconductor Companies* and *Financial Profile* analyses, the Proxy fails to disclose the individual multiples Piper Jaffray calculated for each company utilized. The omission of these multiples renders the summary of these analyses and the implied per share value reference ranges materially misleading. A fair summary of a companies analysis requires the disclosure of the individual multiples for each company; merely providing the range that a banker applied is insufficient, as shareholders are

unable to assess whether the banker applied appropriate multiples, or, instead, applied unreasonably low multiples in order to drive down the implied share price ranges.

36. Likewise, with respect to Piper Jaffray's *Selected M&A Transaction Analysis*, the Proxy fails to disclose the individual multiples Piper Jaffray calculated for each transaction utilized. For the same reasons mentioned above, the failure to disclose the individual multiples for each of the 10 transactions that were considered renders the summary of the analysis and the implied per share value reference ranges materially misleading.

37. In sum, the omission of the above-referenced information renders statements in the Proxy materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special shareholder meeting to vote on the Proposed Transaction, Plaintiff and the other members of the Class will be unable to make an-informed decision regarding whether to vote in favor of the Proposed Transaction, and they are thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## COUNT I

**(Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R . § 240.14a-9 Promulgated Thereunder)**

38. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

39. Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

40. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that Proxy communications with shareholders shall not contain "any statement

which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

41. The omission of information from a Proxy will violate Section 14(a) and Rule 14a-9 if other SEC regulations specifically require disclosure of the omitted information.

42. Defendants have issued the Proxy with the intention of soliciting shareholder support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Proxy, which fails to provide critical information concerning: (i) financial projections for Echelon; and (ii) the valuation analyses performed by Echelon's financial advisor, Piper Jaffray, in support of its fairness opinion.

43. In so doing, Defendants made misleading statements of fact and/or omitted material facts necessary to make statements in the Proxy not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy, but nonetheless failed to obtain and disclose such information to shareholders although they could have done so without extraordinary effort.

44. The Individual Defendants knew or were negligent in not knowing that the Proxy is materially misleading and omits material facts that are necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon most if not all of the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction; indeed, the Proxy states that the Piper Jaffray reviewed and discussed their financial analyses with the Board, and further states that the Board considered both the financial analyses provided by Piper Jaffray as well as their fairness opinion and the assumptions made and matters considered in connection therewith. Further, the Individual Defendants were privy to and had knowledge of the projections for the Company and the details surrounding the process leading up to the signing of the Merger Agreement. The Individual Defendants knew or were negligent in

not knowing that the material information identified above has been omitted from the Proxy, rendering the sections of the Proxy identified above to be materially incomplete and misleading. Indeed, the Individual Defendants were required to review the Piper Jaffray's analyses in connection with their receipt of the fairness opinion, question Piper Jaffray as to the derivation of its fairness opinion and be particularly attentive to the procedures followed in preparing the Proxy and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

45. The Individual Defendants were, at the very least, negligent in preparing and reviewing the Proxy. The preparation of a Proxy by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Individual Defendants were negligent in choosing to omit material information from the Proxy or failing to notice the material omissions in the Proxy upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Individual Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation of the Company's financial projections.

46. Echelon is also deemed negligent as a result of the Individual Defendants' negligence in preparing and reviewing the Proxy.

47. The misrepresentations and omissions in the Proxy are material to Plaintiff and the Class, who will be deprived of their right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff and the Class have no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**(Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act)**

48. Plaintiff incorporates each and every allegation set forth above as if fully set forth

herein.

49. The Individual Defendants acted as controlling persons of Echelon within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Echelon, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

50. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

51. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Proxy at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in preparing this document.

52. In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

53. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

54. As set forth above, the Individual Defendants had the ability to exercise control

over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

55. Plaintiff and the Class have no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Declaring that this action is properly maintainable as a Class Action and certifying Plaintiff as Class Representative and his counsel as Class Counsel;

B. Enjoining Defendants and all persons acting in concert with them from proceeding with the shareholder vote on the Proposed Transaction or consummating the Proposed Transaction, unless and until the Company discloses the material information discussed above which has been omitted from the Proxy;

C. Directing the Defendants to account to Plaintiff and the Class for all damages sustained as a result of their wrongdoing;

D. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E. Granting such other and further relief as this Court may deem just and proper.

## **JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

//

//

//

//

//

| | |
|---|---|
| DATED: July 20, 2018 | Respectfully submitted, |
| | */s/ David E. Bower* |
| | David E. Bower |
| **OF COUNSEL** | |
| | David E. Bower SBN 119546 |
| **MONTEVERDE & ASSOCIATES PC** | **MONTEVERDE & ASSOCIATES PC** |
| | 600 Corporate Pointe, Suite 1170 |
| Juan E. Monteverde | Culver City, CA 90230 |
| The Empire State Building | Tel: (213) 446-6652 |
| 350 Fifth Avenue, Suite 4405 | Fax: (212) 202-7880 |
| New York, NY 10118 | Email: dbower@monteverdelaw.com |
| Tel.: (212) 971-1341 | |
| Fax: (212) 202-7880 | *Counsel for Plaintiff* |
| Email: jmonteverde@monteverdelaw.com | |
| | |
| *Counsel for Plaintiff* | |